IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**FRANK L.,**

        **Plaintiff,**

v.                                        **Case No.: 3:25-cv-00146**

**FRANK BISIGNANO,
Commissioner of the Social
Security Administration,**

        **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 6, 8).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings, (ECF No. 6), be **DENIED**; the Commissioner's request for judgment on the pleadings, (ECF No. 8), be **GRANTED**; the Commissioner's

decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

I. **Procedural History**

In November 2021, Plaintiff protectively applied for DIB, alleging disability beginning on February 28, 2020, due to "chronic back pain – L5 nerve damage, low vision – wears bifocals, and severe arm pain – bilateral carpal tunnel syndrome." (Tr. 224-228, 273). The state agency denied the claim initially and on reconsideration (Tr. 99-108, 111-118). Plaintiff requested a hearing before the ALJ, which was held on February 8, 2024. (Tr. at 37-76, 119-122). During the hearing, Claimant amended his alleged onset date to April 1, 2022. (Tr. at 17, 48). In a decision dated March 21, 2024, the ALJ found that Claimant was not disabled. (Tr. 14-36). Plaintiff requested review of the ALJ's decision, but the Appeals Council determined that there was no basis to grant the request. (Tr. 1-6, 197-223). Thus, the ALJ's decision became the final decision of the Commissioner.

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Brief in Support of Motion for Judgment on the Pleadings, (ECF No. 6), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 8). The time period within which Claimant could reply to the Commissioner's response has expired. Consequently, the matter is fully briefed and ready for resolution.

II. **Claimant's Background**

Claimant was 53 years old on his amended alleged disability onset date and 55 years old on the date of the ALJ's decision. (Tr. at 29). He has a college degree, communicates in English, and previously worked as a registered nurse and pizza

manager. (Tr. at 68, 272, 274).

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the

performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through June 30, 2027. (Tr. at 19, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since his amended alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: spine disorder with lumbar stenosis status post lumbar fusion and status post decompression, left foot drop, and carpal tunnel syndrome. (Tr. at 20, Finding No. 3). The ALJ also considered Claimant's tiny lung nodules, liver cysts, diverticulosis in the sigmoid colon and descending colon, internal hemorrhoids, degenerative joint disease of the shoulders, degenerative disc disease of the cervical spine, bile duct stone status post ERCP, gout, and obesity, but the ALJ found that the impairments were not severe. (Tr. at 20). The ALJ further found that Claimant's depression was not a medically determinable impairment. (Tr. at 21).

Under the third inquiry, the ALJ concluded that Claimant did not have an

impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 21-22, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He is also limited nonexertionally to: handle items frequently; perform fine fingering frequently; climb ramps and stairs frequently and climb ladders, ropes, or scaffolds occasionally; maintain balance over narrow, slippery, or erratically moving surfaces frequently; stoop occasionally; kneel frequently; crouch frequently; crawl occasionally; work at unprotected heights occasionally; and work in close proximity to (i.e., within arm's reach of) dangerous moving mechanical parts occasionally. The claimant must also avoid concentrated exposure to: extreme cold; extreme heat; and vibration.

(Tr. at 22-28, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform any past relevant work. (Tr. at 29, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with the RFC to determine Claimant's ability to engage in other substantial gainful activity. (Tr. at 29-31, Findings 7 through 10). The ALJ considered that (1) Claimant was defined as an individual closely approaching advanced age on the amended alleged disability onset date, but he subsequently changed age category to advanced age when he attained age 55; (2) Claimant had at least a high school education; and (3) Claimant acquired work skills from past relevant work. (Tr. at 29, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a school nurse, recreation aide, price marker, or routing clerk. (Tr. at 30-31, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 31,

Finding No. 11).

## IV. Claimant's Challenges to the Commissioner's Decision

Claimant contends that the ALJ failed to fully develop the medical evidence regarding his impairments, did not evaluate his impairments under the combination of impairments theory, and improperly discounted his treating physicians' opinions. (ECF No. 6). In response, the Commissioner asserts that the ALJ was not required to further develop the record, the ALJ properly considered Claimant's combination of impairments, and the ALJ's medical opinion analysis comports with the regulatory framework and is supported by substantial evidence. (ECF No. 8).

## V. Relevant Evidence

The undersigned thoroughly examined the entire record. The below summary focuses on the evidence that is most relevant to the issues in dispute.

### A. Treatment Records

On August 20, 2020, Claimant presented to Russell Nogot, M.D., reporting a three-year history of diffuse pain in both arms and his lower back. (Tr. at 398). Claimant stated that the pain was only relieved by taking 800 milligrams of ibuprofen every six hours. (*Id.*). He denied trauma, noting that he shattered his L5 vertebrae in a car accident in 1987, but it was repaired without residual symptoms. (*Id.*). Other than his midline lower back scar, Claimant's physical examination findings were completely normal. (Tr. at 399). His x-ray showed mild degenerative changes in his left shoulder, but no issues on the right. (Tr. at 400-401).

Claimant's lumbar spine MRI on December 27, 2021, showed narrowing of the right lateral recess/foraminal entrance and some disc osteophyte complex that appeared to be severe at L1-L2; some moderate to severe foraminal stenosis at L2-L3, and probably

also L3-L4; some lateral recess/canal stenosis at L3-L4 from disc/facet hypertrophy that was probably severe; and chronic L5 loss of height. (Tr. at 501-502). Follow up lumbar x-ray on January 28, 2022, revealed severe spinal canal narrowing at L3-L4 with focal clumping of nerve roots at that level likely related to spinal canal narrowing, although arachnoiditis was not excluded. (Tr. at 595). When conservative treatment failed, Claimant underwent surgery on February 25, 2022, shortly before his amended alleged onset date. (Tr. at 535). The neurosurgeon, J. Paul Muizelaar, M.D., noted that Claimant's severe neurogenic claudication developed in the past two years and almost made it impossible for Claimant to work. (*Id.*). Dr. Muizelaar recorded that Claimant owned a pizza shop and previously worked as a nurse. (*Id.*). The surgery included revision of decompression with bilateral laminectomy, median facetectomy and lumbar disc herniation foraminotomy at L3-L4 plus discectomy of grossly bulging disc and posterior lumbar stenosis interbody fusion. (*Id.*).

On March 9, 2022, Claimant reported to Dr. Muizelaar that his overall pain improved by 50 percent, but he had drop foot on the left side for which he was prescribed an AFO brace. (Tr. at 612). At his next visit on April 13, 2022, Claimant was very happy, as his pain was practically gone and he could walk again without issue, which was nearly impossible before surgery. (Tr. at 614). The AFO brace was helping him very well. (*Id.*). Claimant was working full time again at the business that he owned, although he did not feel that he was at the level that he was a couple of years ago. (*Id.*). On June 15, 2022, Claimant still reported that he was doing very well, his pain was basically gone, and he was working full time at his very busy establishment. (Tr. at 655). He still had drop foot on the left side, but he was using the AFO brace, and the issue was essentially not bothering him. (*Id.*).

Thereafter, on December 14, 2022, Claimant had no pain, although he still had weakness in his left leg. (Tr. at 695). He was using the AFO brace, which helped him well, and he additionally requested a four-prong cane. (*Id.*). Overall, he was very happy with the surgical outcome because his severe pain was totally gone, yet he wondered whether his leg would improve (*Id.*). Dr. Muizelaar ordered an EMG to evaluate. (*Id.*). The nerve conduction studies and needle EMG of the bilateral lower extremities on January 19, 2023, showed evidence of a left L5 and bilateral S1 myotome radiculopathy with active on chronic denervation. (Tr. at 691). Dr. Muizelaar discussed the results with Claimant on February 1, 2023. (Tr. at 716). He recorded that nothing additional could be done about the L5 nerve root involvement, but Claimant was still very happy with the plan because his pain was basically gone. (Tr. at 716). No further follow up was scheduled. (*Id.*). On March 2, 2023, during a visit with another provider, Claimant had no focal deficits and equal muscle tone, but he showed instability. (Tr. at 712). He was instructed to simply continue using the cane and meloxicam for the present time. (*Id.*).

### B. *Evaluations, Opinions, and Prior Administrative Findings*

On March 7, 2022, Uma Reddy, M.D., the state agency medical consultant at the initial level, found that Claimant could perform light exertional work, but he could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, and climb ladders/ropes/scaffolds, and he must avoid concentrated exposure to extreme cold, extreme heat, vibration, pulmonary irritants, and hazards. (Tr. at 80-81).

On April 18, 2022, Dr. Muizelaar completed an RFC check-box form. (Tr. at 618). He opined that Claimant could occasionally and frequently lift/carry 10 pounds, limitedly push/pull in upper and lower extremities, and stand and/or walk less than 2 hours and sit 8 hours with alternate sitting/standing every 30 minutes. (*Id.*).

On February 7, 2023, Stephen Nutter, M.D., performed Claimant's consultative examination. Claimant remained comfortable in both sitting and supine positions. (Tr. at 698). He lifted his left leg slightly higher than the right due to right foot drop; was unable to walk on heels or toes or perform tandem gait; and displayed left leg atrophy, weakness, and foot drop. (Tr. at 699). However, foot drop was only obvious without the brace when the leg was lifted higher to clear the ground. (*Id.*). Claimant appeared stable at station and ambulated with a non-limping, non-lurching gait without unsteadiness nor unpredictability and entirely normal strength except for 1/5 left ankle dorsiflexion and plantarflexion, 0/5 left great toe extension, and 3/5 right great toe extension. (Tr. at 699-700). The strength deficits were aided by the AFO brace. (*Id.*). Thus, the examiner found that a handheld assistive device was not medically necessary. (Tr. at 699). In addition, despite back pain with range of motion testing of the lumbar spine, there was no acute distress, no muscle spasms, preserved sensation (including light touch, pinprick, and vibration), unremarkable reflexes, no clonus, and normal straight leg raising in both in both the seated and supine positions. (*Id.*).

On March 11, 2023, Palle Reddy, M.D., the State agency medical consultant at the reconsideration level, affirmed Dr. Uma Reddy's initial assessment, except that Dr. Palle Reddy found that Claimant could frequently climb ramps/stairs, balance, kneel, and crouch; frequently handle and finger; and had no limitation regarding pulmonary irritants. (Tr. at 89).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial

evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

### A. Duty to Develop the Evidence

Claimant argues that the ALJ failed to adequately develop the evidence regarding his medical impairments. (ECF No. 6 at 7). An "ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Id*. However, an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Hensley v. Kijakazi*,

No. 3:21-CV-00178, 2021 WL 5871542, at *13 (S.D.W. Va. Nov. 23, 2021), *report and recommendation adopted,* 2021 WL 5867126 (S.D.W. Va. Dec. 10, 2021) (collecting cases).

The ALJ's duty is to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1269 (11th Cir. 2007); *Weise v. Astrue,* No. 1:08-cv-00271, 2009 WL 3248086 (S.D.W. Va. Sept. 30, 2009); *Jones v. Saul,* No. 1:19-cv-275-GCM, 2020 WL 2411635, at *3 (W.D.N.C. May 12, 2020). Consequently, when examining the record to determine if it was adequate to support a reasoned administrative decision, the Court looks for evidentiary gaps that resulted in "unfairness or clear prejudice" to Claimant. *Marsh v. Harris,* 632 F.2d 296, 300 (4th Cir. 1980).

Evidence is "insufficient" to evaluate a disability claim when the SSA does not have all of the information needed to make a determination. 20 C.F.R. § 404.1520b(b). The evidence is "inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." *Id.* If the evidence is insufficient or inconsistent, the ALJ can take a number of actions to develop the record, including recontacting medical sources for additional evidence or clarification, requesting additional existing evidence, or ordering a consultative examination. *Id.* The ALJ can also question witnesses, request evidence, and subpoena witnesses. *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (citing 20 C.F.R. §§ 404.944, 404.950(d)). The ALJ may order a consultative examination when the evidence as a whole is insufficient to allow the Commissioner to make a determination or decision on the claim or when there is an

inconsistency in the evidence. *McKenzie v. Colvin*, No. CIV. TMD 13-1026, 2014 WL 3955588, at *12 (D. Md. Aug. 12, 2014) (citing 20 C.F.R. § 404.1519a(b)).

Ultimately, the claimant must establish a prima facie entitlement to benefits, and he or she consequently bears the risk of nonpersuasion. *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (citing *Seacrist v. Weinberger,* 538 F.2d 1054, 1057 (4th Cir. 1976) and 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.")). Thus, the ALJ is not required to act as a claimant's counsel and can presume that the claimant's counsel presented the strongest case for benefits. *Bell v*, 1995 WL 347142, at *4; *Perry*, 2011 WL 5006505, at *15. The ALJ's duty to develop the record does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation. *Perry*, 2011 WL 5006505, at *15 (citations and markings omitted).

In this case, although Claimant essentially lists all of his impairments, his only precise challenge is that the ALJ did not adequately address Dr. Muizelaar's RFC opinion and ignored his testimony regarding frequent restroom breaks, despite corroborating evidence to support both. (ECF No. 6 at 7). However, Claimant does not articulate any evidentiary gaps or identify how the record was insufficient for the ALJ to make a disability determination. The ALJ considered Claimant's testimony, treatment records, consultative examination findings, and the medical opinions, among other evidence. Claimant does not identify any further inquiries that the ALJ should have made or indicate what further evidence was necessary for the ALJ to render a decision on his disability application. He lists pieces of medical evidence in his brief, yet he does not explain how any of it prompted further investigation. Claimant's conclusory assertion that

the ALJ failed to develop the record does not assert a viable challenge to the Commissioner's decision. Moreover, Claimant confirmed, by counsel, at his administrative hearing that he had no objections to the record before the ALJ and the record was complete. (Tr. at 42). Claimant had the opportunity to raise any issues concerning development of the record, but he declined to do so.

For those reasons, the undersigned **FINDS** that the record was sufficiently developed for the ALJ to make an informed decision on Claimant's application for benefits.

### B. Combination of impairments

Claimant next argues that the ALJ failed to properly evaluate his impairments under the combination of impairments theory. (ECF No. 6 at 7). He asserts that the record demonstrates that his impairments, in combination, render him disabled. (*Id.*). In Claimant's view, the ALJ did not account for the synergistic effect of his impairments, such as how obesity and foot drop exacerbate mobility issues, or how diverticulitis and depression impact workplace reliability. (*Id.* at 8).

It is unclear what Claimant means by the "combination of impairments theory." (*Id.* at 7). He references that "[w]hen combined, impairments may equal a listed impairment or preclude substantial gainful activity," and that the RFC assessment does not account for the synergistic effect of his impairments. (*Id.* at 8). However, it is evident that the ALJ considered the combined effects of Claimant's impairments at all steps of the sequential evaluation. For instance, at step two, the ALJ specifically explained that he considered the combined effect of all of Claimant's medically determinable impairments on Claimant's ability to function without regard to whether any such impairments, if considered separately, would be sufficiently severe. (Tr. at 20). The ALJ concluded, with

specific rationale and citations to the record, that Claimant's diverticulitis and obesity were non-severe impairments, and his depression was not a medically determinable impairment. (Tr. at 20-21). The step two findings are unchallenged by Claimant. At step three, the ALJ explicitly considered Claimant's impairments alone and in combination, even specifically mentioning that he considered the effects of Claimant's obesity in combination with his other impairments. (Tr. at 21-22). Finally, in the RFC analysis, the ALJ considered all of Claimant's functional limitations and the combined effects of his impairments. (Tr. at 29). It is curious that Claimant mentions his foot drop when it is, in fact, an extensive consideration in the RFC analysis. (Tr. at 24-28).

The decision documents the ALJ's well-supported rationale for finding that Claimant's impairments, alone or in combination, did not preclude him from engaging in substantial gainful activity. To the extent that the ALJ did not elaborate further on the analysis of Claimant's impairments in combination, the undersigned finds further elaboration was unnecessary because the required analysis clearly took place. Therefore, the undersigned **FINDS** that the ALJ complied with his duty under the applicable law to consider Claimant's impairments in combination.

### C. Treating Physicians' Opinions

In his final assertion of error, Claimant argues that the ALJ substituted his own judgment for that of Claimant's treating physicians. (ECF No. 6 at 9). Claimant lists several providers, one of whom was a consultative examiner and did not treat him. (*Id.*). Moreover, most of the providers that Claimant listed did not render medical opinions. He appears to implicitly acknowledge this point by only specifying that the ALJ did not properly consider Dr. Muizelaar's RFC assessment. (*Id.*). As an initial matter, Claimant is

incorrect that treating physicians' opinions are entitled to controlling weight if well-supported and consistent with the record. (*Id*.).

The "treating physician" rule was eliminated for claims like Claimant's that were filed on or after March 27, 2017. Under the revised regulation, the ALJ must evaluate the persuasiveness of all medical opinions, which are defined as the following:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 404.1520c.

The regulatory factors that the ALJ must consider when evaluating medical opinions include supportability; consistency; relationship of the source to the claimant; length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id*. at § 404.1520c(c). As relevant to this matter, "other factors" refers to evidence that tends to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(5). It "includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id*. When the SSA considers a medical source's familiarity with the other evidence in a claim, it will also consider whether new evidence received after the medical source made his or her medical opinion

or prior administrative medical finding made the medical opinion or prior administrative medical finding more or less persuasive. *Id*.

The supportability and consistency of the opinions are of primary importance. The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id*. at § 404.1520c(b)(2). The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id*. at § 404.1520c(c)(2).

In this case, the ALJ precisely followed this standard in evaluating Dr. Muizelaar's opinion. (Tr. at 28). Claimant does not assert any specific errors in the ALJ's analysis of the opinion. The undersigned **FINDS** that the ALJ properly considered the opinion evidence, and Claimant's generalized, conclusory assertion that the ALJ improperly discounted Dr. Muizelaar's opinion is likewise without merit.

### VIII. Proposal and Recommendations

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 6); **GRANT** Defendant's request to affirm the

decision of the Commissioner, (ECF No. 8); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: November 25, 2025**



Joseph K. Reeder
United States Magistrate Judge